# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE WESLEY WELLS, | 1:05-CV-01218 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KATHY MENDOZA-POWERS, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by plea of guilty on July 7, 1992, to second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit A at 1. Petitioner was sentenced to serve an indeterminate term of life in state prison with the possibility of parole. Id.

On November 14, 2002, Petitioner's first parole suitability hearing was held before the

California Board of Prison Terms (now the Board of Parole Hearings - "BPH"). See Answer, Exhibit B. Petitioner attended the hearing and was represented by his attorney, William Graysen. Id. At the conclusion of the 2002 hearing, the BPH denied parole and deferred rehearing for two years. Id. at 83.

On August 13, 2004, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court challenging the BPH's decision. See Answer, Exhibit D. On June 29, 2005, the petition was denied with citation to In re Dannenberg, 34 Cal.4th 1061 (2005) and In re Rosenkrantz, 29 Cal.4th 616 (2002). Id.

On September 27, 2005, Petitioner filed the instant petition for writ of habeas corpus in this Court. The petition for writ of habeas corpus challenges the 2002 decision of the BPH denying parole. Petitioner contends the decision was not supported by the evidence in violation of his due process rights. He further contends the BPH failed to properly apply statutory, decisional and regulatory law to the facts of the case. He further claims there is a presumptive policy to deny inmates parole. He also argues the state's administrative rule is unconstitutionally vague in failing to specify the element of murder which is especially heinous, atrocious, or cruel.

On January 24, 2007, Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's answer on February 26, 2007.

## **FACTUAL BACKGROUND**[1]

Petitioner and his estranged wife, Cheryl Wells, had incurred numerous separations and marital difficulties during their seven-year relationship. On September 17, 1991, during a period of separation Ms. Wells visited Petitioner at his home with their fifteen-month old son. Initially, the visit was friendly and affectionate. However, after approximately one hour they became involved in another argument. Petitioner discussed tentative plans to attend a concert together, and the victim informed him that she was considering attending the concert with another man. Petitioner then obtained a handgun and shot Ms. Wells twice, once in the abdomen and once in the chest. According to Petitioner, the young son was in another room. Later that evening,

---

[1]The information is derived from the probation officer's report dated July 23, 1992. See Answer, Exhibit C at 2-3.

2

Petitioner transported the victim's body by car to an alley and deposited the body at that location. At 11:00 p.m., the body was discovered.

Based on certain evidence, Petitioner was listed as a prime suspect. On the afternoon of September 18, 1991, Petitioner presented himself at the homicide division of the police department. Later that night, he made a full confession. Petitioner provided information on the location of the murder weapon, and it was later recovered.

Petitioner had an extensive history of domestic violence and alcohol abuse. On the night in question, Petitioner admitted he had been drinking alcohol.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63,

70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at

409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.	Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability, Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the

5

prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

With regard to the procedural protections outlined in Greenholtz, as Respondent submits, Petitioner was provided all that is required. Petitioner was provided with advance notice of the hearing, representation by counsel at the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard during the hearing, and a written decision explaining the reasons why parole was denied. See Answer, Exhibit B.

Petitioner, however, contends the BPH's decision was arbitrary and capricious and had no evidentiary support. After reviewing all relevant evidence, the Court finds that the state court decisions rejecting Petitioner's claims were not unreasonable, because the BPH's decision is supported by "some evidence."

In denying parole in 2002, the BPH considered and found several factors indicating unsuitability. First, the BPH relied heavily, though not exclusively, on the facts of the commitment offense. Pursuant to 15 Cal.Code Regs. § 2402(c)(1)(D)[2], the Board found the first

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
   (C) The victim was abused, defiled or mutilated during or after the offense.
   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

degree murder was carried out in an exceptionally cruel and callous manner. A review of the entire record shows this finding is supported by at least "some evidence." After a heated argument, Petitioner shot and killed the victim in the presence of their fifteen-month old son. See Answer, Exhibit C at 12. While Petitioner contends the son was in another room, there is no dispute that the son was present in the house when the incident occurred. Petitioner did not call the police or seek aid; rather, he resumed drinking and remained in the house with the body and the young child for another two hours until he decided to dump the body. Id. In light of these facts, there is some evidence to support the finding that the offense was carried out in a callous disregard for human suffering. 15 Cal. Code Regs. § 2402(c)(1)(D); Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir.2003).

The BPH also found the motive for the killing was trivial. As previously stated, Petitioner and the victim were estranged and pending a divorce at the time of the offense. See Answer, Exhibit C at 11. The relationship was extremely tumultuous and characterized by periods of separation. Id. On the night in question, Petitioner and the victim got into a heated argument over attending a concert. Id. at 12. Petitioner and the victim apparently had tentative plans to attend together; however, the victim stated she was considering attending the concert with another man at which point Petitioner became angry, obtained a handgun, and shot and killed her. Id. at 12. In light of these facts, the Board's finding that the motive was trivial is supported by some evidence. 15 Cal. Code Regs. § 2402(c)(1)(E).

The BPH also noted Petitioner had a previous record of violence and unstable social history of tumultuous relationships. These also are enumerated circumstances demonstrating unsuitability. 15 Cal. Code Regs. §§ 2402(c)(2), 2402(c)(3). In make these findings, the Board noted that Petitioner had a criminal history involving spousal and domestic abuse. See Answer, Exhibit B at 82. Petitioner had repeated police contacts for spousal abuse incidents and was in domestic violence diversion when he committed the offense. See Answer, Exhibit C at 16. In the past, the victim had documented accounts in letters and diary entries of Petitioner threatening to kill her and her children if she ever left him. Id. at 14. The victim documented repeated instances of physical, mental, and emotional abuse that Petitioner inflicted on her and her children. Id. The

victim stated she had sustained numerous injuries including a shoulder separation, fractured ribs, bite marks, bruises, cuts, black eyes, and excessive bleeding. Id. at 15. She noted, "On June 17, (1991), my husband advised me he was slowly killing me, and if I was not dead by the age of 30, I would be so disfigured, nobody else would want me." Id. The victim stated that Petitioner had an extensive history of alcohol abuse. Id. She further stated he would often become "very violent and vicious especially when he is drinking." Id. Petitioner denies these accounts, and he points to the psychological evaluation as proof of rehabilitation. Nevertheless, even considering this report, the Board's conclusions under §§ 2402(c)(2) and 2402(c)(3) are supported by some evidence.

The BPH also considered Petitioner's post-commitment behavior per §§ 2402(c)(6) and 2402(d)(9). The Board noted that Petitioner had not received a single "chrono" for misconduct since he had been incarcerated. See Answer, Exhibit B at 82. The Board further noted that Petitioner had completed two vocations. Id. at 83. He had taken part in substantial self-help, having obtained at least 30 certificates. Id. He obtained a tenure certificate for Alcoholics Anonymous for ten straight years of participation. Id. He presented solid parole plans. Id. Nevertheless, the BPH found these positive factors, while promising for a possible future grant of parole, did not outweigh the negative factors at the present time.

Petitioner argues the Board relies on the unchanging circumstances of the underlying offense. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, ___ F.3d ___, 2007 WL 2027359 *5 (9th Cir. 2007), citing Biggs, 334 F.3d at 916. As discussed above, however, the circumstances of the offense, while significant, were not the only reasons for the Board's decision. The Board found

1  Petitioner's history of violence and unstable relationships to be highly relevant in concluding
2  Petitioner would pose an unreasonable danger to public safety should he be presently released.
3  Moreover, the concerns raised in Biggs are not present in this case, because the Board is not
4  *continually* relying solely on the commitment offense. This is Petitioner's first parole hearing.
5  Furthermore, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely
6  on the commitment offense, because, as here, the prisoner had not yet served the minimum term
7  of his sentence. Irons, 2007 WL 2027359 *6.

8       Pursuant to 15 Cal. Code Regs. § 2402, the Board must consider "[a]ll relevant, reliable
9  information available to the panel." In making its determination, the Board "shall include the
10 circumstances of the prisoner's social history; past and present mental state; past criminal history,
11 including involvement in other criminal misconduct which is reliably documented; the base and
12 other commitment offenses, including behavior before, during and after the crime; past and
13 present attitude toward the crime; any conditions of treatment or control, including the use of
14 special conditions under which the prisoner may safely be released to the community; and any
15 other information which bears on the prisoner's suitability for release." Id. It is apparent the
16 Board did so in this case and carefully balanced and assessed the various factors. Those findings
17 were supported by at least "some evidence."

18      Petitioner also claims the Board violated state regulatory, decisional and statutory law in
19 concluding Petitioner is not suitable for parole. This claim is purely one of state law, and
20 generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S.
21 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for
22 errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor,
23 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does
24 not rise to the level of a constitutional violation, may not be corrected on federal habeas");
25 Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409
26 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was
27 available under the United States Constitution."). As discussed above, the Board's decision
28 complied with the Constitution.

1    Petitioner also alleges he has been denied parole because of an arbitrarily established
2 policy of indefinitely withholding the establishment of a parole date. This claim should also be
3 rejected.  Petitioner's assertion of a blanket policy is pure speculation, and as more fully
4 discussed above, "[i]n the parole context, the requirements of due process are met if 'some
5 evidence' supports the decision." Biggs, 334 F.3d at 914. If there is not some evidence to support
6 a decision denying parole, due process is violated. Therefore, even though California law states
7 that the BPH shall normally set parole release dates, due process does not require the parole
8 board to set a parole date where some evidence exists demonstrating that Petitioner should not be
9 paroled. Here, there was some evidence supporting the Board's decision.

10    Petitioner further claims the Board's decision violates due process because the terms
11 "especially heinous, atrocious or cruel" in 15 C.C.R. § 2402(c)(1), are unconstitutionally vague.
12 This claim is without merit. A similar due process challenge to the terms "significant planning
13 and preparation" was denied when the federal court found the state inmate had received "all the
14 process due" in his parole hearing. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1399 (9th Cir.
15 1987). As set forth above, Petitioner's parole suitability hearing satisfied the requirements of due
16 process; therefore, his vagueness claim is without merit. Id.; see also Glauner v. Miller, 184 F.3d
17 1053, 1055 (9th Cir.1999) (*per curiam*) (statute requiring inmate be certified "not a menace to
18 the health, safety or morals of others" before being eligible for parole was not unconstitutionally
19 vague); Winston v. California Bd. of Prison Terms, 2006 WL 845584, *6 (E.D.Cal.) (rejecting
20 challenge to language "heinous, atrocious, or cruel" contained in the gravity of the commitment
21 offense regulation as unconstitutionally vague); Butler v. Calderon, 1998 WL 387612, *5-6
22 (N.D.Cal.) (rejecting challenge to term "callous" on vagueness ground where inmate received all
23 process due at parole suitability hearing).

24    In light of the above, it cannot be said that the state court resolution of Petitioner's claims
25 "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly
26 established Federal law, as determined by the Supreme Court of the United States" or "resulted
27 in a decision that was based on an unreasonable determination of the facts in light of the evidence
28 presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 11, 2007**                        /s/ Sandra M. Snyder
UNITED STATES MAGISTRATE JUDGE